**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 99-50821

_____


METROPOLITAN LIFE INSURANCE COMPANY,

                                                    Plaintiff,
                        V.

        LaVENA ATKINS; ET AL.,

                                                    Defendants.

_____


    LaVENA ATKINS; CHRISTINA LaVENA ATKINS, A Minor,

        Defendants - Third Party Plaintiffs - Appellants,

                        V.

        UNITED STATES OF AMERICA,

                            Third Party Defendant - Appellee.


_____

            Appeal from the United States District Court
                for the Western District of Texas
_____


                    August 24, 2000

Before WIENER, BENAVIDES and PARKER, Circuit Judges.

ROBERT M. PARKER:

    Third-Party Plaintiffs LaVena Atkins and Christina LaVena Atkins appeal the dismissal of their claim for negligence filed against Third-Party Defendant United States of America. We reverse and remand for further proceedings.


1

**FACTS AND PROCEDURAL HISTORY**

Harold Lynn Tyler, a federal employee, died on June 14, 1997. At the time of his death, Tyler was insured by a Federal Employees Group Life Insurance ("FEGLI") policy for $104,000.00. Tyler's wife, Edith Tyler and his minor sister Christina LaVena Atkins made competing claims for the proceeds. Atkins was the named beneficiary on Tyler's designation of beneficiary form. However, because the copy of the form held in Tyler's personnel file was unsigned, Edith Tyler claimed a superior right to the proceeds. Metropolitan Life Insurance Company brought a declaratory judgment suit to determine who was entitled to the proceeds and tendered the policy into the registry of the court. Tyler's wife and sister settled their dispute, and the question of the appropriateness of the resulting distribution is not before this court on appeal.

LaVena Atkins, mother of the deceased and next friend of the minor claimant Christina LaVena Atkins ("Atkins"), brought a third party negligence action against the United States under the Federal Tort Claims Act ("FTCA") 28 U.S.C. § 1346 (1994) and Federal Employees Group Life Insurance Act ("FEGLIA") 5 U.S.C. §§ 8701-8716 (1994), claiming that a federal personnel clerk breached her duty by failing to secure and retain in her files a signed original of Tyler's beneficiary form. The district dismissed the action. Atkins appeals.

**DISCUSSION**

2

## A. Negligent Misrepresentation Exception to FTCA

The United States, as sovereign, is immune from suit except as it consents to be sued, and the terms of its consent define the federal courts' jurisdiction to entertain suits against it. *See United States v. Nordic Village, Inc.*, 503 U.S. 30, 34 (1992). The FTCA subjects the United States to liability for personal injuries "caused by the negligent or wrongful act or omission of any employee of the Government." 28 U.S.C. § 1346(b)(1994). The FTCA waiver of sovereign immunity, must be strictly construed. *See Levrie v. Dep't of the Army*, 810 F.2d 1311, 1314 (5th Cir. 1987).

The United States filed a motion to dismiss Atkins's claims pursuant to FED. R. CIV. P. 12(b)(1) for lack of subject matter jurisdiction, arguing that there has been no waiver of sovereign immunity under the FTCA or FEGLIA. Specifically, the United States contended that this suit falls within the exception to FTCA's waiver of sovereign immunity for "[a]ny claim arising out of . . . misrepresentation . . . ." 28 U.S.C. § 2680(h)(1994). The district court agreed and dismissed the action.

The exception applies to both negligent and intentional misrepresentations, as well as to both affirmative acts and omissions of material fact. *See, e.g.*, *McNeily v. United States*, 6 F.3d 343, 347 (5th Cir. 1993). "Moreover, causes of action distinct from those excepted under § 2680(h) are nevertheless barred when the underlying governmental conduct 'essential' to the

3

plaintiff's claim can be fairly read to 'arise out of' conduct that would establish an excepted cause of action." *Id.* Thus, the manner in which a plaintiff chooses to plead her claim is not controlling; rather, a court must "look to the essential act that spawned the damages" to determine whether the misrepresentation exception bars the claim. *See Saraw Partnership v. United States*, 67 F.3d 567, 570 (5th Cir. 1995). To determine whether the instant negligence claim arises out of misrepresentation, we consider whether the focal point of the claim is negligence in the communication of (or failure to communicate) information or negligence in the performance of an operational task, with misrepresentation being merely collateral to such performance. *See id*. at 570-71. The key question is "whether the chain of causation from the alleged negligence to the alleged injury depends upon the transmission of misinformation by a government agent." *Commercial Union Ins. Co. v. United States*, 928 F.2d 176, 179 (5th Cir. 1991).

The district court found that the transmission of misinformation was a necessary link in the chain of causation between the alleged negligent conduct and the injury. The crux of Atkins's third-party claim was that the United States, through its employees, negligently failed to discover that Tyler had not signed his name in the designated block on the copy of the beneficiary form in Tyler's personnel file and negligently filed the unsigned form rather than a properly signed copy, with the result that

4

Tyler's intended designation of Christina LaVena Atkins as his life insurance beneficiary was ineffective.  In the district court's view, non-communication was an integral component of the claim. The district court reasoned that even if the federal employee had determined that Tyler had not signed the form, it would have been necessary to take the additional step of communicating the problem to Tyler so that he could supply his signature.  The evidence in the record, taken in the light most favorable to the Atkins, does not support this view of the case.  While no direct evidence establishes why an unsigned copy was retained in Tyler's personnel file, the parties' stipulated facts would support a conclusion by the fact finder that Tyler signed one or more copies of the beneficiary form and turned it over to the United States.[1]  We

---

[1]The parties stipulated, *inter alia*, that:

M.  There are affidavits from the two witnesses Robert Baker and Robert Haislet that more than one original form existed.  One or both of them advised Mr. Tyler that his signature did not appear on his copy.  Mr. Tyler responded he was aware the copy lacked his signature, but believed he had signed the original, which was on file with the USA.  Mr. Tyler apparently believed his designation of beneficiary form was valid because neither Ms. Montgomery nor any other USA employee advised him of any problems with his form.

N.  Mr. Tyler gave a copy of the designation form to his mother for safekeeping.  His mother, LaVena Atkins, stated that the copy did not bear his signature. According to his mother, Mr. Tyler replied: "I know, mother, but I signed the one they have at the office. This is just a copy for you to keep.

Joint Stipulated Facts and Issues.

5

understand Atkins's claims as alleging that the United States employee failed to preserve and properly file the correct copy -- that is, the signed copy -- of Tyler's form.  We conclude that because the negligent performance of an operational task allegedly caused the harm, the negligent misrepresentation exception to FTCA's waiver of sovereign immunity does not apply. *See Saraw*, 67 F.3d at 571.  We therefore reverse the dismissal for lack of subject matter jurisdiction.

**B. Waiver of Sovereign Immunity under FEGLIA**

The district court, having concluded that there was no waiver of immunity under the FTCA, went on to consider whether there was some other possible basis of jurisdiction over Atkins's claims.  In her pleadings, Atkins had invoked Federal Employees Group Life Insurance Act, 5 U.S.C. § 8715 (1994)("FEGLIA"), which waives sovereign immunity independently of the FTCA when a plaintiff claims that the United States breached duties imposed by FEGLIA. *See Barnes v. United States*, 307 F.2d 655, 657 (D.C. Cir. 1962). The district court, citing 5 U.S.C. § 9705(a) and 5 C.F.R. § 870.802, found that the burden of properly executing and filing the designation of beneficiary form rests with the insured, while the employing office of the United States has no duty beyond receiving the forms.  The district court therefore held that FEGLIA does not provide the necessary waiver of sovereign immunity.  This holding has given rise to two opposing arguments on appeal.  Atkins argues

6

that the district court erred in that the United States does have a duty to Tyler under FEGLIA. Contrariwise, the United States urges us to affirm the holding that FEGLIA imposed no duty, and goes on to argue that FEGLIA preempts any possible cause of action Atkins may have under the FTCA.

**1. Duty**

"The district courts of the United States have original jurisdiction . . . of a civil action or claim against the United States founded on [FEGLIA]." 5 U.S.C. § 8715 (1994). It is clear, based on § 8715, that the United States has consented to be sued for any breach of legal duty owed by it under FEGLIA. *See Barnes*, 307 F.2d at 657. We must then define the nature of the legal duty owed by a United States employee under the circumstances of this case. The district court was unable to discern any legal duty on the part of the United States under FEGLIA to make certain that its employees sign their designation of beneficiary forms. Noting that the statute and regulations addressing the designation of beneficiaries speaks in terms of a United States employing office "receiving" the designation, the district court held that the law imposes no duty on the United States. However, one plausible version of the facts emerging from the pleadings and evidence is that Tyler fulfilled his duty to turn over a properly filled out and signed designation of beneficiary form and a United States employee lost or misfiled it. While we agree with the district

7

court that the personnel clerk had no duty to ensure that the forms were properly completed, we conclude that the United States, through the personnel clerk, has a duty to maintain the designation of beneficiary forms turned over to its care as a part of its responsibilities under FEGLIA.

On appeal, the United States urges this court to affirm the district court's holding concerning duty by adopting the alternative analysis developed in *Robinson v. United States*, 8 Cl. Ct. 343 (1985), *aff'd*, 806 F.2d 249 (Fed. Cir. 1986). *Robinson* assumed without deciding that the United States had a duty to the plaintiff under FEGLIA, but that plaintiff could not recover money damages from the United States. The *Robinson* plaintiff alleged that the United States breached a duty to timely provide her mother with forms which would have allowed the mother to convert her FEGLIA policy to an individual policy. During the United States's delay in providing forms, the plaintiff's mother died and her FEGLIA policy lapsed. The United States moved to dismiss the lawsuit on the grounds that FEGLIA does not "provide for the recovery of money damages against the United States." *Id*. at 343. The plaintiff argued that FEGLIA created a duty upon the United States to timely provide the requisite conversion forms. The court disagreed, stating that even if the statute created a duty, in the absence of a "much clearer legislative statement," the court would not recognize a money remedy against the United States for the

8

breach of any such duty. *Id.* at 345. The court reasoned that without specific Congressional intent, it would be unwise to "expose the Government to potential monetary liability for every administrative lapse which might occur in the course of operating a program as large as FEGLI[A]." *Id.* The United States urges us to bypass the issue of duty and hold, as the *Robinson* court did, that Congress's directive concerning liability under FEGLIA is not explicit enough to allow recovery of money damages against the United States. We disagree. The "civil action or claim against the United States founded on [FEGLIA]" contemplated by § 8715 is sufficient to establish Congress's intent to allow suits such as the present one to proceed in district court.

### 3. Preemption

Under the FTCA, the United States waived sovereign immunity for torts committed by government employees under circumstances where the United States, if a private person, would be liable under the law of the place where the act or omission occurred. 28 U.S.C. §§ 1346(b) and 2674 (1994). FEGLIA, however includes a preemption provision, which provides:

> The provisions of any contract under this chapter which relate to the nature or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any law of any State or political subdivision thereof, or any regulation issued thereunder, which relates to group life insurance to the extent that the law or regulation is inconsistent with the contractual provisions.

5 U.S.C. § 8709(d)(1)(1994). Since the 1980 addition of the

9

preemption language to FEGLIA, no published case has expressly decided whether FEGLIA preempts a state law negligence claim such as Atkins's case.  The issue was not raised or decided in the district court, but was raised for the first time in the United States's appellee brief in this court.  Because the issue is not dispositive of this appeal, we decline to address it in the first instance without further development.

CONCLUSION

For the foregoing reasons, we reverse the district court's dismissal of Atkins's third-party claims and remand for further proceedings consistent with this opinion.

REVERSED and REMANDED.

10