339 F.3d 942
 Harold BIBEAU; Melanie Ann Dooyen Bibeau, on their own behalf and as representatives of classes of similarly situated persons, Plaintiffs-Appellants,
v.
PACIFIC NORTHWEST RESEARCH FOUNDATION, INC., a Washington corporation; Battelle Pacific Northwest Laboratories, an Ohio corporation; Battelle Memorial Institute, an Ohio corporation; MAvis Rowley; Daniel Diiaconi, Doctor, in his individual and Former official capacity; Fernando Leon, Doctor, in his individual and former official capacity; Robert E. Wildman, in his individual and former official capacity; John Randolph Totter, in his individual and former official capacity; James Leslie Liverman; United States of America, Defendants-Appellees.
 No. 01-36147.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 9, 2003.
 Filed August 5, 2003.
 
 Kendall S. Zylstra, Berger & Montague, Philadelphia, Pennsylvania, for the plaintiffs-appellants.
 J. Charles Kruse, United States Department of Justice, Torts Branch, Civil Division, Washington, D.C., for the defendants-appellees.
 Appeal from the United States District Court for the District of Oregon; Michael R. Hogan, District Judge, Presiding. D.C. No. CV-95-06410-HO.
 Before LAY,* WALLACE, and TALLMAN, Circuit Judges.
 PER CURIAM.
 
 
 1
 Harold and Melanie Bibeau appeal the district court's judgment in favor of the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680 (1994) ("FTCA"). We affirm.
 
 I.
 
 2
 Harold Bibeau, a former prison inmate at the Oregon Department of Corrections, and his wife, Melanie Ann Dooyen Bibeau, brought claims under the FTCA based on personal injury suffered by Mr. Bibeau, who participated in prison based research. While incarcerated from 1963-1969, Mr. Bibeau participated in government funded research experiments that exposed his testes to high levels of radiation. These experiments, known as the "Heller Experiments," were designed to produce information regarding the effects of radiation on the male reproductive system. For voluntarily participating in the Heller Experiments, Bibeau was paid $5 per month for agreeing to radiation exposure, $10 per biopsy, and $100 for undergoing a vasectomy.
 
 
 3
 Bibeau alleges that, as a result of the experiments, he suffers from intermittent pain and rashes on his scrotum and groin, pain from the biopsies, as well as severe emotional distress. He also alleges that he suffers from a significantly increased risk of developing cancer and other serious illnesses. As a result, he requires medical monitoring.
 
 
 4
 After the district court dismissed the action, we affirmed in part and reversed and remanded in part. Bibeau v. Pacific Northwest Research Foundation Inc., 188 F.3d 1105 (9th Cir.1999), modified, 208 F.3d 831 (9th Cir.2000).
 
 
 5
 After the initial remand, the private defendants settled with Plaintiffs. The United States then moved to dismiss the case for lack of subject matter jurisdiction on the basis that the FTCA's discretionary function exception, 28 U.S.C. § 2680(a), barred the Bibeaus' suit. In January 2001, the district court granted the United States' Motion to Dismiss on the negligent supervision claims, holding that those claims were barred by the discretionary function exception. On subsequent motion, the district court held that the claim for intentional infliction of emotional distress ("IIED") was only partially barred by the discretionary function exception. The court ultimately dismissed this claim on a motion for summary judgment in October 2001, holding that the Bibeaus failed to establish two essential elements of their IIED claim: (1) an intent to inflict severe emotional distress on Mr. Bibeau, and (2) the causation of Mr. Bibeau's alleged emotional distress.
 
 II.
 
 6
 We review a district court's decision to dismiss an action based on lack of subject matter jurisdiction under the discretionary function exception de novo. GATX/Airlog Co. v. United States, 286 F.3d 1168, 1173 (9th Cir.2002). We accept as true the factual allegations in the complaint. Id. A. The Discretionary Function Exception
 
 
 7
 The FTCA is a limited waiver of sovereign immunity, authorizing suit against the United States for tortious performance of governmental functions in limited cases. 28 U.S.C. §§ 1346(b), 2671-2680. See also GATX/Airlog, 286 F.3d at 1173. The Act is subject to some exceptions, including the "discretionary function" exception. These exceptions are to be strictly construed. FDIC v. Craft, 157 F.3d 697, 707 (9th Cir.1998). If the asserted liability falls within an exception to the FTCA, then the claims must be dismissed for lack of subject matter jurisdiction. See Mundy v. United States, 983 F.2d 950, 952 (9th Cir.1993).
 
 
 8
 The discretionary function exception exempts from liability "[a]ny claim based upon ... the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). The Supreme Court has established a two-prong test for determining the applicability of the discretionary function exception. See United States v. Gaubert, 499 U.S. 315, 324-25, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991). First, we ask whether the alleged wrongful conduct violated a specific and mandatory regulation or statute. Id. If so, the conduct is outside the realm of discretion. Id. If there is no mandatory regulation or statute involved, we then ask whether the conduct was susceptible to being based upon social, economic, or political policy. Id.; Berkovitz v. United States, 486 U.S. 531, 536, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988); see also GATX/Airlog, 286 F.3d at 1173-74; Miller v. United States, 163 F.3d 591, 593 (9th Cir.1998). In review, a court must be mindful that "[t]he basis for the discretionary function exception was Congress' desire to `prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort.'" Berkovitz, 486 U.S. at 536-37, 108 S.Ct. 1954 (quoting United States v. Varig Airlines, 467 U.S. 797, 814, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984)).
 
 
 9
 The Bibeaus' negligent supervision claim is based on their allegation that the United States breached its duty to supervise and oversee the Heller Experiments. They contend that the Government breached the following specific duties: development of the Heller Experiments' protocol; ensuring that risks to experiment participants were minimized; ensuring that selection of participants was fair; and, ensuring that all participants were fully informed such that their consent was freely given.
 
 
 10
 With respect to all of the challenged actions, the first prong of the discretionary function test is clearly met. We can find no mandatory or prescribed government regulation on the record that required the agencies to supervise the manner in which their independent contractors implemented the research contracts. Furthermore, the Director of the Division of Biology and Medicine was given broad discretion to enter into contracts with outside scientists and research firms.
 
 
 11
 The Bibeaus principally rely on the existence of various letters exchanged by the Atomic Energy Commission and the Division of Biology and Medicine to prove the Government was constrained by a mandatory regulation in its supervision of the Heller Experiments. The letters discuss various biomedical issues, including safety concerns. Whether these letters constitute a mandatory regulation is not a close question: these sporadic communications, made by individuals of varying levels of importance to the operation of the experiments, cannot constitute a blanket regulation constraining the Government's operations.
 
 
 12
 The First Circuit addressed an issue strikingly similar to the one we face here in Heinrich v. Sweet, 308 F.3d 48 (1st Cir.2002). In Heinrich, the plaintiffs brought a claim under the FTCA stemming from experimental radiation treatment conducted through the Atomic Energy Commission ("AEC") on individuals who suffered from an aggressive form of brain cancer. AEC funded these medical research trials during the years 1960-1961 through a contract with an outside research physician. Id. at 54-55. The First Circuit affirmed the district court's dismissal of the FTCA claims under the independent contractor exception, as well as the discretionary function exception. Id. at 59. Like the Bibeaus, the Heinrich plaintiffs urged the court to consider four letters written by AEC officials to be a mandatory regulation. The First Circuit declined, as we do now, reasoning that there was "no clear evidence that these letters represented any specific or binding AEC policy" because "[t]hey are individual communications, not necessarily disseminated to anyone but their individual addressees... contain[ing] only broadly-worded statements...." Id. Therefore, without some mandate, the decision not to supervise the Heller Experiments was an act of discretion. See Reed ex rel. Allen v. United States Dep't of Interior, 231 F.3d 501, 504 (9th Cir.2000); see also Gaubert, 499 U.S. at 322, 324, 111 S.Ct. 1267.
 
 
 13
 We turn then to the second prong, which requires a determination as to whether the action at issue was susceptible to being based on social, economic, or political policy. See id. at 323-24, 111 S.Ct. 1267. The Gaubert Court held that when statutes, policies, regulations, or guidelines allow a government official to exercise discretion, "it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id. at 324, 111 S.Ct. 1267. A broad Congressional grant of discretion to contract with independent researchers[1] (such as the one in the instant case) carries with it the presumption that acts made in pursuit of that goal are grounded in policy. See id. at 324-25, 111 S.Ct. 1267.
 
 
 14
 The Bibeaus argue that the Heller Experiments were not susceptible to policy analysis because no competing policy consideration could justify the allegedly non-consensual, non-therapeutic Heller Experiments. We disagree. At the time the Heller Experiments were contracted, the Government was faced with the competing policy considerations of limited resources, research expertise in private institutions, and the Congressionally expressed desire for scientific research progress. The Supreme Court has indicated that in determining whether a decision is susceptible to policy analysis, the decision could involve balancing interests, allocating scarce resources, and setting priorities. See Varig Airlines, 467 U.S. at 820, 104 S.Ct. 2755. See also Miller, 163 F.3d at 595. The policy considerations described above fall into these categories.
 
 
 15
 Looking again to Heinrich, we observe that the First Circuit found that the AEC policy language requiring a "reasonable basis" to expect "therapeutic benefit" was broad enough to require that the agency officials make multiple individualized judgments, each requiring the exercise of discretion and application of the agency's overarching policies. The court held that this was a "classic discretionary function" and as such was shielded from suit. Heinrich, 308 F.3d at 59. We agree and find that the analysis in Heinrich is also applicable to the case at bar.
 
 
 16
 For the foregoing reasons, we affirm the district court's dismissal of the Bibeaus' claims of negligent supervision against the United States for lack of jurisdiction under the FTCA.
 
 
 17
 
 B. Intentional Infliction of Emotional Distress
 
 
 
 18
 The Bibeaus claim that from the early 1970s until around December 1993, the United States intentionally concealed the nature of the Heller Experiments from the participants. They further allege that the Government intentionally failed to provide medical monitoring, or to inform participants that medical monitoring was required.
 
 
 19
 The Bibeaus argue that the Government knew: (1) that the experiment participants needed medical monitoring; (2) that the participants would experience certain physical symptoms (rashes, itching, pain, sexual dysfunction, swelling, etc.); and (3) that these symptoms were certain to cause severe emotional distress. The Bibeaus claim that, as a result, they have suffered a severe degree of emotional distress.[2]
 
 
 20
 We review a district court's summary judgment de novo, viewing the evidence in the light most favorable to the non-moving party. Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir.2000).
 
 
 21
 To succeed on a claim for IIED in Oregon, a claimant must demonstrate: "(1) the defendant intended to inflict severe emotional distress on the plaintiff, (2) the defendant's acts were the cause of the plaintiff's severe emotional distress, and (3) the defendant's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct." McGanty v. Staudenraus, 321 Or. 532, 901 P.2d 841, 849 (1995) (citation omitted). The McGanty court held that a defendant possesses the requisite intent for purposes of an IIED claim if he desires to cause consequences of his act, or he believes that the consequences are substantially certain to result from it. Id. at 853.
 
 
 22
 The Bibeaus concede that Defendants did not intend to inflict emotional distress, therefore in order to meet the intent requirement of McGanty they must show that Defendants believed that severe emotional distress was substantially certain to result from it. Id. The Bibeaus argue that the Defendants knew with substantial certainty that withholding information regarding the experiments would cause Mr. Bibeau to worry about getting cancer, relive prison experiences, or neglect his family in an effort to attend to a lawsuit.
 
 
 23
 However, it was not the Government's failure to disclose the information regarding the experiments that was the source of Plaintiffs' alleged emotional distress. Rather, the experiments themselves caused the injury. We agree with the district court that no reasonable trier of fact could conclude that the Defendants could be substantially certain that withholding information from Mr. Bibeau could cause the severe emotional distress he alleges, because it was this very information which Mr. Bibeau alleges to have caused his distress.
 
 
 24
 In the absence of evidence of the Government's intent to inflict emotional distress or substantial belief that the experiments would cause Mr. Bibeau severe emotional distress, Plaintiffs fail to establish a prima facie claim for intentional infliction of emotional distress.
 
 
 25
 The judgment of the district court is AFFIRMED.
 
 
 
 Notes:
 
 
 *
 The Honorable Donald P. Lay, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 [1]
 See 42 U.S.C. § 2134.
 
 
 [2]
 The Government did not specifically address the Bibeaus' IIED claims in its original motion to dismiss. As such, the district court did not analyze the discretionary function's application to the IIED claims in its order dismissing the negligent supervision claims for lack of FTCA jurisdiction (dated January 19, 2001). It did, however, address the application of the discretionary function to the IIED claims in an order dated May 10, 2001. In that order, the district court granted in part the United States' renewed motion to dismiss. The IIED claim involved three challenged acts. The district court dismissed the IIED claim as to one of these acts, holding that this part of the claim was barred by the discretionary function exception. It left in place two of the Bibeaus' challenged acts, holding that the United States' actions therein could not be shielded from scrutiny. Neither party directly challenges the district court's holding on the application of the discretionary function exception to the IIED claims