*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| GRANT MILLER and WHITING HARBOR AQUAFARM LLC, | ) ) ) | Supreme Court No. S-15370 |
| Appellants, | ) ) | Superior Court No. 1SI-11-00138 CI |
| v. | ) ) | O P I N I O N |
| STATE OF ALASKA, DEPARTMENT OF ENVIRONMENTAL CONSERVATION, | ) ) ) ) | No. 7021 – July 24, 2015 |
| Appellee. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, First Judicial District, Sitka, David V. George, Judge.

Appearances: Teka K. Lamade, Sitka, for Appellants. David T. Jones, Senior Assistant Attorney General, Anchorage, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

BOLGER, Justice.

## I.     INTRODUCTION

An oyster farmer closed his farm after dozens of people became sick from eating his oysters. He sued a state agency, alleging that the agency negligently informed him that the site of his farm was suitable for shellfish farming. The superior court granted summary judgment for the agency, concluding that the farmer's

misrepresentation claim was barred by state sovereign immunity. The farmer argues that the agency's sovereign immunity defense was inapplicable because his complaint alleged a claim of negligence, not negligent misrepresentation. But the allegations in the farmer's complaint supported only a negligent misrepresentation claim. We affirm.

## II.    FACTS AND PROCEEDINGS

In 1996 the Department of Environmental Conservation (the Department) approved an area in Whiting Harbor for shellfish farming. In 2000 Grant Miller applied for a permit to operate an oyster farm in that area, and the Department granted his application. In 2009 dozens of people became sick after eating oysters from Miller's oyster farm, and Miller shut down the farm.

In 2011 Miller filed a complaint against the Department, alleging that it had conducted its 1996 studies in a negligent manner and "held out Whiting Harbor as an approved site for oyster farming." He further alleged that he had relied on the Department's approval of the site for shellfish farming when he sought and obtained a permit, and that his reliance was a proximate cause of his oyster farm's failure. Miller later amended his complaint to add the City of Sitka as a defendant, add Whiting Harbor Aquafarm LLC (his business) as a plaintiff, and allege that the Department was aware of the presence of the invasive species tunicate in the area at the time it granted his permit.

The Department moved for summary judgment, arguing that Miller's amended complaint alleged only a single claim, misrepresentation, which was barred by state sovereign immunity.[1] Miller opposed this motion, arguing that his claim was one of negligence, not misrepresentation. The superior court granted the Department's summary judgment motion.

---

[1]    *See* AS 09.50.250(3).

Miller appeals.

## III.  STANDARD OF REVIEW

"We review rulings on motions for summary judgment de novo.  When applying the de novo standard of review, we apply our independent judgment to questions of law, adopting the rule of law most persuasive in light of precedent, reason, and policy."[2]

## IV.  DISCUSSION

In accordance with article II, section 21 of the Alaska Constitution, AS 09.50.250 allows "[a] person or corporation having a . . . tort claim against the state [to] bring an action against the state . . . ."  This waiver of state sovereign immunity is not unlimited, and AS 09.50.250(3) explicitly states that "an action may not be brought if the claim . . . arises out of . . . misrepresentation."  The tort of negligent misrepresentation has four essential elements:

> (1) the party accused of misrepresentation must have made the statement in the course of his business, profession or employment; (2) the representation must supply "false information"; (3) the plaintiff must show "justifiable reliance" on the false information; and (4) the accused party must have failed "to exercise reasonable care or competence in obtaining or communicating the information."[3]

Miller's allegations against the Department, in both his original and amended complaints, constitute a straightforward claim of negligent misrepresentation.  First, Miller alleged that the Department "held out Whiting Harbor as an approved site

---

**2**     *Bush v. Elkins*, 342 P.3d 1245, 1251 (Alaska 2015) (quoting *ConocoPhillips Alaska, Inc. v. Williams Alaska Petroleum, Inc.*, 322 P.3d 114, 122 (Alaska 2014)) (internal quotation marks omitted).

**3**     *Willard v. Khotol Servs. Corp.*, 171 P.3d 108, 118-19 (Alaska 2007) (quoting RESTATEMENT (SECOND) OF TORTS § 552(1) (1977)).

for oyster farming" as part of its "duty to conduct [suitability] studies in compliance with the State's . . . policies and procedures." Second, he alleged that the State's assurance of the site's suitability for oyster farming was false. Third, he alleged that he "actually and reasonably relied" on this assurance. And fourth, he alleged that the Department was negligent in conducting its suitability studies. Under AS 09.50.250(3), the Department is immune from liability for this alleged misrepresentation.

Miller argues that he subsequently introduced, in an affidavit supporting his opposition to summary judgment, evidence of material facts that demonstrate that his claim was one of negligence, not negligent misrepresentation. Namely, he claims that he submitted evidence demonstrating that the Department "remained involved with on-going inspections aimed at establishing a duty of care with regard to public health[,] . . . fail[ed] to . . . enforce the terms of the [nearby] Wastewater Treatment Plant's permit[,] . . . [and] failed to respond appropriately in light of its knowledge of flow rates at the [Treatment Plant] and its ability to regulate that flow." Miller claims these negligent acts "placed an unreasonable risk not only on Mr. Miller, but on the public generally."

But we do not need to decide whether this evidence would support an independent negligence claim, because neither Miller's original nor amended complaint made allegations encompassing this evidence. The only injury Miller claimed was detrimental reliance on the Department's assurance that the site was suitable for shellfish farming. This reliance was an element of Miller's misrepresentation claim; it did not

support an independent negligence claim.[4]  And Miller never amended his complaint to allege an injury other than detrimental reliance.

Finally, Miller cites several federal cases where courts have allowed negligence claims against government agencies to proceed "even though misrepresentations [were] collaterally involved."[5]  But in each of these cases, government officials acted, or failed to act, in ways that caused injuries to the plaintiffs that were separate and apart from any misrepresentation.

In *Block v. Neal* a government official visited a construction site three times and wrote inspection reports that failed to indicate defects in the project.[6]  The district court originally dismissed the case,[7] but the Sixth Circuit reversed, concluding that the Federal Tort Claims Act's misrepresentation exception[8] did not bar the homeowner's claim.[9]  The U.S. Supreme Court affirmed.[10]  Reasoning that the official "may have

---

[4]  *See JBP Acquisitions, LP v. U.S. ex rel. FDIC*, 224 F.3d 1260, 1264 (11th Cir. 2000) ("The test in applying the misrepresentation exception [to the Tort Claims Act] is whether the essence of the claim involves the government's failure to use due care in obtaining and communicating information.  The exception covers actions for negligence when the basis for the negligence action is an underlying claim for misrepresentation." (citations omitted)).

[5]  *See Block v. Neal*, 460 U.S. 289 (1983); *Nat'l Carriers, Inc. v. United States*, 755 F.2d 675 (8th Cir. 1985); *Guild v. United States*, 685 F.2d 324 (9th Cir. 1982).

[6]  460 U.S. at 292.

[7]  *Id.*

[8]  28 U.S.C. § 2680(h) (2012).

[9]  460 U.S. at 293-94.

[10]  *Id*. at 294.

undertaken both to supervise construction of [the] house and to provide [the homeowner] information regarding the progress of construction," the Court held that the misrepresentation exception would not bar a claim stemming from the official's negligence in *supervising* the project.[11]

In *National Carriers, Inc. v. United States* a government meat inspector undertook the tasks of identifying and separating exposed and unexposed meat at an accident site, but he negligently performed these duties.[12] He *also* informed the salvage crew that the exposed and unexposed meat was "all the same."[13] Although the district court concluded that the misrepresentation exception shielded the government from liability, the Eighth Circuit reversed, holding that the inspector "acted negligently [in his inspection and separation duties], in a manner distinct from his misrepresentations."[14]

And in *Guild v. United States* a federal agency "surveyed possible [dam] sites, performed foundation analyses, . . . prepared a topographic survey, . . . recommended a site for [a] dam and reservoir, . . . design[ed] . . . the dam and reservoir[,] and prepared construction plans and specifications."[15] After the dam failed due to faulty design, the district court granted summary judgment for the government, concluding that the misrepresentation exception barred the suit.[16] The Ninth Circuit reversed, holding

---

[11]     *Id.* at 298-99.  The homeowner did not allege negligent misrepresentation. *Id.*

[12]     755 F.2d 675, 675-77 (8th Cir. 1985).

[13]     *Id.* at 676 (internal quotation marks omitted).

[14]     *Id.* at 677.

[15]     685 F.2d 324, 324 (9th Cir. 1982).

[16]     *Id.* at 325.

that "[d]esigning the dam and reservoir was an operational task and the [g]overnment performed it negligently. Any communication of misinformation was collateral."[17]

In contrast to these cases, Miller's misrepresentation claim was not collateral to an independent claim of negligence — it was the *only* claim he alleged in his complaint. Because the Department is immune from liability for misrepresentation, the superior court's summary judgment ruling was appropriate.

## V. CONCLUSION

We AFFIRM the judgment of the superior court.

---

[17]     *Id.* at 326.